IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VICTORIA ROSE SHAH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-2798-E |
| | § | |
| UNITED STATES CITIZENSHIP AND | § | |
| IMMIGRATION SERVICES, et al. | § | |
| | § | |
| Defendants. | § | |

## ORDER AND MEMORANDUM OPINION

Before the Court are: (1) Plaintiff's Motion for Summary Judgment, (Doc. 22); and (2) Defendants' Motion for Summary Judgment, (Doc. 24), filed by Tracy Renaud, Acting Director of the United States Citizenship and Immigration Service ("USCIS"), the USCIS, Merrick Garland, the Attorney General of the United States, Alejandro Mayorkas, Secretary of the United States Department of Homeland Security ("DHS"), and the DHS. Having reviewed the motions, the respective memorandums of law, the responses and the replies, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendants' Motion for Summary Judgment. Accordingly, Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

### I.   BACKGROUND

Samman Shah ("Mr. Shah") is a citizen of Nepal and immigrated to the United States in September 2002 to attend college in Washington state on an F-1 student visa. (Certified Administrative Record ("CAR"), 348). Mr. Shah left college but remained in the United States, living in several different states from 2002 to 2012. (CAR 131). According to Mr. Shah, he met Jennifer Reitzes ("Ms. Reitzes")—a United States citizen—via mutual friends while visiting Texas

in May of 2012. (CAR 131). After their initial encounter, Mr. Shah returned to Boston, where he was living at the time, but kept in touch with Ms. Reitzes and eventually moved to Texas. (CAR 131). Mr. Shah and Ms. Reitzes dated for three to six weeks and were married in August 2012. (CAR 449-450, 132, 369).

In October 2012, Ms. Reitzes filed a Form I-130 Petition for Alien Relative (the "2012 PAR") on behalf of Mr. Shah. (CAR 180). In support of the 2012 PAR, Ms. Reitzes submitted the following documents to the to the USCIS: (1) Mr. Shah and Ms. Reitzes's marriage license and certificate, (CAR 369-70); (2) a judgment of divorce from Ms. Reitzes's previous husband, (CAR 445); (3) bank statements from Mr. Shah and Ms. Reitzes's joint bank account from April 11, 2013 to June 12, 2013, (CAR 360-63); (4) an unsigned lease containing both Mr. Shah and Ms. Reitzes's names for 3819 William Dahaes Drive, Apartment # 506 ("Apartment 506"), Irving, Texas, 75038, (CAR 371-84); (5) photos from Mr. Shah and Ms. Reitzes's wedding; (6) Mr. Shah and Ms. Reitzes's joint tax returns, (CAR 393-404); (7) copies of Mr. Shah and Ms. Reitzes's driver's licenses, (410); (8) bank statements for the couple's joint bank account from September 11, 2012 to September 13, 2012, (CAR 411-14); and (9) Ms. Reitzes's birth certificate, (CAR 443). The USCIS conducted two interviews with Mr. Shah and Ms. Reitzes—on February 15, 2013, and July 11, 2013—and conducted three site visits between November 22, 2013, and February 10, 2014, to various locations in the Dallas-Fort Worth area to investigate the bases for the 2012 PAR. On February 19, 2014, nine days after the final site visit, Ms. Reitzes withdrew the 2012 PAR. (CAR 338). The couple divorced on May 15, 2014. (CAR 271-278). The USCIS acknowledged the withdrawal on October 3, 2014. (CAR 334). In 2016, Mr. Shah received Temporary Protective Status to remain in the United States. (CAR 290, 304).

In March 2018, Mr. Shah married Plaintiff Victoria Rose Shah ("Plaintiff" or "Mrs. Shah"). (CAR 209). On June 6, 2018, Plaintiff file a Form I-130 Petition for Alien Relative (the "2018 PAR") on Mr. Shah's behalf. (CAR 183-184). On April 5, 2019, the Field Office Director of the USCIS Office in Charlotte, North Carolina sent Plaintiff a Notice of Intent to Deny Petition for Alien Relative (the "2019 NOID"). In the 2019 NOID, the USCIS Director informed Plaintiff that there was evidence in Mr. Shah's immigration file indicating that he entered his previous marriage to Ms. Reitzes for the purposes of evading immigration laws, which would prohibit him from receiving a visa under § 204(c) of the Immigration and Nationality Act (the "INA"). (CAR 181).

In the 2019 NOID, the USCIS Director cited: (1) several discrepancies in the answers given by Mr. Shah and Ms. Reitzes in their two interviews with the USCIS in 2013; and (2) evidence discovered on a USCIS site visit in February 2014 that Mr. Shah was living within another woman—his supposed ex-girlfriend Seta Thapa ("Ms. Thapa"), with whom he had previously lived in New York—and not with Ms. Reitzes as he claimed. (CAR 181). The 2019 NOID also noted that the three site visits conducted by the USCIS revealed no evidence that Mr. Shah and Ms. Reitzes lived together as they claimed. (CAR 181). The 2019 NOID stated that Ms. Reitzes failed to prove by a preponderance of the evidence that she and Mr. Shah shared a residence, jointly owned property, and commingled financial resources. (CAR 181). Therefore, USCIS contended that Mr. Shah's immigration file contained "substantial and probative evidence" that his marriage to Ms. Reitzes was a sham instituted for the purpose of enabling him to evade immigration laws (CAR 181). The 2019 NOID informed Plaintiff of this evidence and provided her with an opportunity to submit countervailing evidence in support of her petition and in opposition to the proposed denial of the 2018 PAR. (CAR. 181).

On April 30, 2019, Plaintiff's counsel submitted a statement and evidence that counsel claimed rebutted the USCIS's contention that there was substantial and probative evidence that Mr. Shah and Ms. Reitzes's marriage was a sham. (CAR 126-174). On May 3, 2019, the USCIS issued its decision denying the 2018 PAR (the "2019 USCIS Denial"). (CAR 005-010). In the 2019 USCIS Denial, the USCIS Director explained the relevant legal standard for determining whether a beneficiary is prohibited from receiving a visa due to prior marriage fraud. (CAR005-006). The Director explained the content of the 2019 NOID, noted Plaintiff's NOID response evidence, and determined that the response evidence did not rebut the derogatory evidence in Mr. Shah's file. (CAR 007-008). The Director concluded that there was substantial and probative evidence that Mr. Shah previously engaged in marriage fraud and was thus prohibited from receiving a visa under § 204(c) of the INA. (CAR 007-008).

Plaintiff appealed the 2019 USCIS Denial to the Board of Immigration Appeals (the "BIA" or the "Board"). (CAR 1-118). On July 13, 2021, the BIA issued a decision affirming the USCIS's denial of the 2018 PAR (the "2021 BIA Decision"). (CAR 001-005). In the 2021 BIA Decision, the Board denied Plaintiff's appeal, concluding that "the record support[ed] a finding that [Mr. Shah's] prior marriage was entered into for the purpose of evading the immigration laws." (CAR 003). Temporary Board member Joan Geller, writing on behalf of the Board, laid out the inconsistencies detailed in the 2019 NOID and the 2019 USCIS Denial and noted that the Director was entitled to consider circumstantial evidence in determining whether Mr. Shah and Ms. Reitzes's marriage was valid at its inception. (CAR. 003). The Board determined that, after reviewing "all relevant evidence of record in the totality of the circumstances," there was "substantial and probative evidence" that Mr. Shah's prior marriage was fraudulent and entered

into for the purpose of evading the immigration laws of the United States and affirmed the 2019 USCIS Denial. (CAR. 004).

On November 11, 2021, Plaintiff filed her Original Complaint in this matter, requesting that this Court set aside the 2021 BIA Decision. (Doc. 1). After Defendant filed their Answer, (Doc. 11), the Parties jointly moved to file the Certified Administrative Record under seal. (Doc. 19). This Court granted that motion, (Doc. 20), and Defendants filed the CAR. (Doc. 21). On August 23, 2022, Plaintiff filed her Motion for Summary Judgment, (Doc. 22), asking this Court to: (1) declare the 2021 BIA Decision arbitrary, capricious, and contrary to law; and (2) order the BIA to approve the 2018 PAR. (Doc. 22). On October 6, 2022, Defendants filed their Motion for Summary Judgment, (Doc. 24), and Consolidated Memorandum of Law in Support of their Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, (Doc. 25), requesting that this Court affirm the 2019 BIA Decision. The cross-motions for summary judgment have been fully briefed and are ripe for judgment.

## II.   Legal Standard

### A.   Summary Judgment under Rule 56

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A dispute of a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Id.* The moving party bears the burden of showing that summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323. The moving party meets its burden by informing the court of the basis of

its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Id.*; FED. R. CIV. P. 56.

When reviewing the evidence on a motion for summary judgment, the Court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). The Court cannot make a credibility determination in light of conflicting evidence or competing inference. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

## B.    Form I-130 Petitions and BIA Decisions

A United States citizen may apply for his or her spouse to obtain lawful permanent residence by filing a Form I-130 Petition for Alien Relative ("PAR") on behalf of their spouse with the USCIS. 8 C.F.R § 204.1(a)(1)(8). To establish eligibility for a PAR, the applicant bears the initial burden to prove a legitimate, good-faith marriage by preponderance of the evidence. *See* 8 U.S.C. § 1361 ("Whenever any person makes application for a visa or any other document required for entry, or makes application for admission, or otherwise attempts to enter the United States, the burden of proof shall be upon such person to establish that he is eligible to receive such visa[.]"); 8 C.F.R. § 103.2(b)(1) ("An applicant or petitioner must establish that he or she is eligible for the requested benefit at the time of filing the benefit request and must continue to be eligible through adjudication."); *Matter of Singh*, 27 I. & N. Dec. 598, 605 (BIA 2019) ("[T]he petitioner has the initial burden to prove the bona fides of the marriage by a preponderance of the evidence."). The USCIS then must conduct "an investigation of the facts of each case[.]" 8 U.S.C. § 1154(b).

Section 204(c) of the Immigration & Nationalization Act prohibits the approval of application for a visa if :

> (1) [T]he [beneficiary] has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States. . . by reason of marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws[;] or (2) the Attorney General has determined that the alien has attempted to or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c). As the relevant regulation explains, the INA "prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." 8 C.F.R. § 204.2(a)(1)(ii). Thus, the USCIS must deny a PAR if there is "there is substantial and probative evidence of such an attempt or conspiracy" with respect to a prior marriage, regardless of the *bona fides* of the marriage underlying the PAR. *Id.*

When evaluating whether a marriage—either the marriage underlying a PAR claim or a prior marriage—was fraudulent, "[t]he 'central question' is . . . whether the parties 'intended to establish a life together at the time they were married.'" *Matter of Singh*, 27 I. & N. Dec. at 601 (quoting *Matter of Laureno,* 19 I. & N. Dec. 1, 2-3 (BIA 1983)). Where "the record contains evidence of fraud, the USCIS must advise the petitioner [via a NOID] of any derogatory evidence" and provide the petitioner the chance to respond. *Matter of Singh*, 27 I. & N. Dec. at 605; *see also* 8 C.F.R. § 103.2(b)(16)(i). At this stage, the burden shifts to the petitioner to rebut the USCIS's finding of fraud and establish that the prior marriage was not entered into for the purpose of evading immigration laws by a preponderance of the evidence. *Matter of Singh*, 27 I. & N. Dec. at 605.

In *Matter of Singh*, the BIA clarified that "'substantial and probative evidence' . . . refers to the standard of proof required to establish marriage fraud, not to the standard of review" the Board applies when considering appeals of PAR denials by the USCIS. *Id.* at 606. The BIA explained that, because "the consequence of engaging in marriage fraud . . . is a permanent bar to the approval of any future visa petition, the evidence of fraud must be a relatively high bar." *Matter of Singh*, 27 I. & N. Dec. at 607. Thus, the BIA concluded that the standard "should be higher than a preponderance of the evidence and closer to clear and convincing evidence." *Id.* Specifically, the Board held that "to be 'substantial and probative,' the evidence must establish that is more than probably true that the [challenged] marriage was fraudulent." *Id.*

The BIA in *Matter of Singh* also discussed the type of evidence that can be considered when determining whether there is substantial and probative evidence of marriage fraud. The Board made clear that: (1) "[t]he application of the 'substantial and probative evidence' standard requires the examination of all of the relevant evidence and a determination as to whether such evidence, when viewed in its totality, establishes, with sufficient probability, that the marriage is fraudulent;" and (2) "[t]his determination may be based on either direct or circumstantial evidence." *Id.* at 610. While "'any relevant evidence' can be considered in establishing marriage fraud, . . . the evidence relied upon must create more than a 'reasonable inference' of fraud." *Id.* at 608 (quoting *Matter of Tawfik*, 20 I. & N. Dec. 166, 168 (BIA 1990)).

With respect to circumstantial evidence, "[s]ignificant inconsistencies coupled with minimal documentary evidence of a shared life" can support a finding of marriage fraud." *Id.* at 608. On the other hand, "minor inconsistencies" coupled with "limited" documentary evidence should be considered but are not—without more—likely to be sufficient to satisfy the substantial and probative standard. *Id.* at 609. "However, evidence that the parties knowingly and deliberately

attempted to mislead or deceive immigration officials regarding their cohabitation, joint finances, or other aspects of the marriage strongly indicate fraud." *Id.* Moreover, "affidavits alone will generally not be sufficient to overcome evidence of marriage fraud in the record to corroborate the assertion made by the affiants." *Id.*

Finally, the BIA reviews a USCIS decision to deny a PAR based on prior marriage fraud *de novo. Id.* at 604 ("8 C.F.R. § 1003.1(d)(3)(iii) clearly states that the Board applies a *de novo* standard of review to all questions of fact and law in any appeal from the denial of a visa petition."). As such, the BIA examines the evidence contained in the administrative record to determine whether there is substantial and probative evidence of that the beneficiary previously engaged in marriage fraud. Thus, the BIA makes its own factual finding as to whether a beneficiary previously engaged in marriage fraud under 8 U.S.C. § 1154(c).

### C.      Standard of Review of the BIA's Final Decision

Under the Administrative Procedure Act, a final agency decision—such the 2021 BIA Decision—are reviewed under a "highly deferential" standard of review. *See Pension Ben. Guar. Corp. v. Wilson N. Jones Mem'l Hosp.*, 374 F.3d 362, 366 (5th Cir. 2004) (citation omitted). "A denial by the [BIA] of an application for a visa may be reversed only if the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Nat'l Hand Tool Corp.*, 889 F.2d at 1475 (citing 5 U.S.C. § 706(2)(A)). An agency's action is arbitrary and capricious if:

> [T]he agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs contrary to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Tex. Oil & Gas Ass'n v. U.S. E.P.A.*, 161 F.3d 923, 933 (5th Cir. 1998) (quoting *Motor Vehicle Mfrs Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

The Fifth Circuit has stated that "[w]hen the arbitrary and capricious standard is invoked to question the factual basis for an agency's conclusions, [a court's] review is functionally the same as the 'substantial evidence' test used to evaluate formal agency action under 5 U.S.C § 706(2)(E)." *Amin v. Mayorkas*, 24 F.4th 383, 393 (5th Cir. 2022). When the arbitrary and capricious standard is performing the "function of assuring factual support, there is no *substantive* difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense." *Id.* (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683–84 (D.C. Cir. 1984) (Scalia, J.)) (emphasis in original) (some internal quotation marks omitted).

Thus, a factual finding by the BIA that a beneficiary previously engaged in marriage fraud is reviewed for substantial evidence, "which only requires that the BIA's decision[] be support by record evidence and be substantially reasonable." *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009) (quotation marks omitted); *see also Brown v. Napolitano*, 391 F. App'x 346, 349 (5th Cir. 2010) (per curiam) (citing 5 U.S.C. § 706(2)(E)), *Omagah v. Aschcroft*, 288 F.3d 254, 258 (5th Cir. 2002) ("The substantial evidence standard requires only that the BIA's decision be supported by record evidence and be substantially reasonable.") (citation omitted). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). The Fifth Circuit has held that "to obtain a reversal of [a determination of the BIA], [a plaintiff] must show that the evidence he presented was so compelling that no reasonable fact-

---

MEMORANDUM OPINION AND ORDER

finder could fail to arrive at his conclusion" and that "[t]he evidence must not merely support the [plaintiff's] conclusion but must compel it." *Silwany-Rodriguez v. I.N.S.*, 975 F.2d 1157, 1160 (5th Cir. 1992) (citation omitted).

## III.   ANALYSIS

Plaintiff argues that the Court should set aside the 2021 BIA Decision because: (1) the BIA applied the wrong legal standard and thus its decision was contrary to law; (2) the BIA's decision was arbitrary and capricious; and (3) the BIA was improperly constituted because the member issuing the decision was a temporary appointee. Defendants contest each of these arguments. For the reasons discussed below, the Court concludes that Defendants are correct and are entitled to summary judgment affirming the 2021 BIA Decision.

### A.   The BIA Applied the Correct Legal Standard

Plaintiff argues that the 2021 BIA Decision was contrary to law because the USCIS—not the BIA—appeared to have improperly stated the wrong standard of proof for marriage fraud in the 2019 USCIS Denial. Plaintiff points to a footnote in the 2021 BIA Decision, which reads: "Insofar as the Direct stated the wrong standard of proof for marriage fraud in the decision . . . , there is no prejudice as the Director clearly recognized the correct legal standard in making the marriage fraud determination." (CAR 004, fn. 2). Plaintiff asserts that "dismiss[ing] the Director's use of the wrong legal standard and summarily conclude[ing] that he 'clearly recognized' the correct legal standard when he patently did not, is arbitrary and capricious." (Doc. 22-1, pg. 15). Plaintiff points to a portion of the 2019 USCIS Denial that reads:

> Mrs. Reitzes failed to prove by a preponderance of the evidence that she and Shag (sic) maintained a shared residence, jointly owned property, and co-mingled financial resources. Petitioner (Jennifer Reitzes), failed to show that her marriage to the Beneficiary (Samman Shah) was entered in good faith and not for immigration purposes.

(CAR 007-008). Plaintiff argues that the "analysis offered by the District Director should not have been credited or upheld by the Board because despite a rote recitation of the standard of law at the beginning the of the decision, the actual analysis employs the improper standard of law." (Doc. 22-1, pg. 12). Moreover, Plaintiff asserts—without legal citation—that "[b]ecause the wrong standard of law was applied in the agency's initial decision and subsequently upheld by the Board, the agency's decisions are arbitrary, capricious, and contrary to law." (Doc. 22-1, pg. 12).

The Court disagrees. As discussed above, the BIA reviews the decisions of USCIS Directors de novo. *Matter of Singh*, 27 I. & N. Dec. at 604. Thus, BIA independently "reviewed the record of proceedings, including the May 3, 2019, decision of the Director, the April 5, 2019, Notice of Intent to Deny ('NOID'), the petitioner's May 1, 2019, response to the NOID, and the petitioner's contentions on appeal." (CAR 002). In doing so, the BIA independently determined whether the USCIS Director's denial was "supported by substantial and probative evidence that is documented in [Mr. Shah's] file." (CAR 002). The BIA correctly explained that standard of proof when it accurately cited its holding in *Matter of Singh* that "the degree of proof necessary to constitute 'substantial and probative evidence' is more than a preponderance of the evidence, but less than clear and convincing evidence." (CAR 002). Thus, the BIA applied the correct standard of proof required for determining marriage fraud occurred under 8 U.S.C. 1154(c) and 8 C.F.R. 204(a)(1)(ii).

Additionally, Plaintiff mischaracterizes the legal standard of "substantive and probative evidence" and the nature of the evidence required to meet that standard. Plaintiff argues that "[a]t no point in the analysis of the initial agency decision, nor in the Board's decision, did the agency proffer that there was any evidence that [Mr. Shah] and Ms. Reitzes ***never*** lived together, or point to anything concrete that would indicate the couple did not have the intention to share a life

together." (Doc. 22-1, pg. 16) (emphasis in original). However, as noted above, the BIA need not have direct or concrete evidence of fraud. The BIA has explicitly stated that direct evidence of fraud is not required to establish marriage fraud. *See Singh*, 27 I. & N. Dec. at 608 ("circumstantial evidence alone may be sufficient to constitute 'substantial and probative evidence' of marriage fraud").

Plaintiff has not established that the BIA's decision was contrary to law because the BIA applied the wrong legal standard. Properly framed, Plaintiff's argument contests whether the evidence on the record before the BIA cleared the "substantial and probative" threshold for finding that Mr. Shah had previously engaged in marriage fraud under 8 U.S.C. § 1154(c). The BIA determined that it did, and this Court cannot substitute its own judgment for that of the agency. *U.S. v. Garner*, 767 F.2d 104, 116 (5th Cir. 1985).

## B.      The BIA's Decision Was Not Arbitrary and Capricious

As discussed above, a finding by the BIA that a beneficiary previously engaged in marriage fraud is reviewed for substantial evidence, "which only requires that the BIA's decision[] be support by record evidence and be substantially reasonable." *Shaikh*, 588 F.3d at 863. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames*, 707 F.2d at 164. To obtain a reversal of the 2021 BIA Decision, Plaintiff "must show that the evidence [she] presented was so compelling that no reasonable fact-finder could fail to arrive at [her] conclusion"—the evidence in the administrative record that was before the BIA "must not merely support the [Plaintiff's] conclusion but must compel it." *Silwany-Rodriguez*, 975 F.2d at 1160. Plaintiff has failed to make that showing.

---

In this case, the reviewing official at the USCIS denied the 2018 PAR based on the finding that there was substantial and probative evidence that Mr. Shah entered into his marriage with Ms. Reitzes for the purpose of enabling his avoidance of immigration laws. (CAR 008). The BIA affirmed the USCIS's decision, agreeing with the Director's finding that there were "discrepancies it the record relating matters central to the marital relationship, which constitute[d] substantial and probative evidence to support the denial" of Plaintiff's PAR. (CAR 003-004). The BIA noted that petitioners are "responsible for ambiguities in the record, and it is incumbent upon them to resolve inconsistencies with objective evidence." (CAR 004). The BIA found that the Plaintiff's evidence submitted in response to the 2018 NOID did not resolve the record discrepancies because "[i]t is not sufficient to attempt to explain or reconceal inconsistencies or conflicting accounts without competent, objective evidence pointing to whether the truth actually lies." (CAR 004) (citing *Matter of Ho*, 19 I. & N. Dec. 582, 591-92 (BIA 1988)). For the reasons discussed below, the Court concludes that this determination was "support[ed] by record evidence and [was] substantially reasonable." *Shaik*, 588 F.3d at 863.

The BIA's conclusion that there were substantial discrepancies as to matters central to Mr. Shah and Ms. Reitzes's marriage is supported by the record. First, Mr. Shah and Ms. Reitzes gave conflicting answers as to when they were married. Their marriage license and the 2012 PAR filed by Ms. Reitzes state that the two were married on August 21, 2012. (CAR 370; CAR 270). The couple told USCIS investigators in July 2013 that they were married on this date as well. (CAR 448). However, in both his divorce petition and his sworn statement in response to the 2018 NOID, Mr. Shah stated that he married Ms. Reitzes on August 14, 2012. (CAR 160; CAR 370). Second, during their interviews with USCIS, Mr. Shah and Ms. Reitzes gave conflicting answers to a number of questions—casting doubt on the intimacy of their relationships. Specifically, during the

July 2013 interview, Mr. Shah: (1) incorrectly identified where Ms. Reitzes lived prior to their marriage; (2) did not know what grade Ms. Reitzes's son was entering; (3) incorrectly identified the locations of Ms. Reitzes's tattoo; and (4) incorrectly identified the amount of time Ms. Reitzes spent attending college. (CAR 448). In the same interview, Ms. Reitzes incorrectly identified where Mr. Shah attended college. (CAR 448). Finally, Mr. Shah and Ms. Reitzes gave conflicting answers to the USCIS as to when their relationship began. In their first interview in February of 2013, the couple told USCIS investigators they began dating on August 1, 2012—less than three weeks before their wedding. (CAR 550). However, at their second interview in July 2013, the couple said that Ms. Shah proposed to Ms. Reitzes on his birthday in 2012 (CAR 450). Mr. Shah's birthday is July 10, meaning that the couple told investigators in the second interview that Mr. Shah proposed three weeks before the date on which they told investigators they began dating in the first interview.

The BIA also based its decision on the inconsistencies unearthed by USCIS site visits and field investigations. First, these site visits revealed no evidence that Mr. Shah and Ms. Reitzes were living together at Apartment 506 as they claimed. In November 2013, USCIS investigators conducted a site visit to Apartment 506. (CAR 489). Neither Mr. Shah nor Ms. Reitzes were present. Instead, Nischal Swar ("Mr. Swar")—Mr. Shah's friend—answered the door and told the investigators that he lived there with Mr. Shah and another individual, but that Mr. Shah was at work. (CAR 489). Mr. Swar also told investigators that Ms. Reitzes had moved in with her grandmother in Hurst, Texas in October 2013. (CAR 490). The investigators then visited Ms. Reitzes at her grandmother's home; there, Ms. Reitzes told them that she was no longer living with Mr. Shah and that she had moved out of Apartment 506 in September 2013. (CAR 490). In January 2014, the USCIS investigators conducted another early morning site visit to Apartment 506, and

again found only Mr. Swar and the other roommate. (CAR 491). The BIA and the USCIS District Director both noted that none of the site visits any revealed evidence that Mr. Shah and Ms. Reitzes ever lived together in Apartment 506 as they claimed. (CAR 004; CAR 007).

Second, the BIA noted that, during site visits in February 2014, investigators found evidence indicating that Mr. Shah was living with another woman despite representing to investigators that he and Ms. Reitzes still lived together as husband and wife. (CAR 004). On February 10, 2014, USCIS investigators discovered that Mr. Shah's ex-girlfriend Sweta Thapa— with whom he lived in New York prior to his marriage to Ms. Reitzes—was living in the same apartment complex as the apartment Mr. Shah claimed that he shared with Ms. Reitzes. (CAR 498). That day, the investigators conducted a site visit to Ms. Thapa's address—3819 William Dahaes Drive, Apartment # 1710 ("Apartment 1710"), Irving, Texas, 75038—to determine whether Mr. Shah and Ms. Thapa were living together. (CAR 499). When they arrived, they noticed a car parked in front of Ms. Thapa's building that was registered to Mr. Shah. (CAR 499). The investigators knocked on the door to Ms. Thapa's apartment and Mr. Shah answered the door. (CAR 499). The investigators asked Mr. Shah a series of questions, and Mr. Shah represented to them that he and Ms. Reitzes were still living together as husband and wife. (CAR 499). The investigators asked Mr. Shah if they could enter the apartment and he consented. (CAR 499).

Mr. Shah told investigators that he was at Apartment 1710 because he was dog-sitting for the sister of one of his friends, but that he did not really know the women that lived in the apartment. (CAR 499). However, the investigators knew this to be untrue, as they were aware that: (1) Ms. Thapa lived in Apartment 1710; (2) she was Mr. Shah's "ex-girlfriend;" and (3) they lived together in New York until 2011 (CAR 498-99). During their time in Apartment 1710, investigators noticed evidence in indicating that Mr. Shah was living there with Ms. Thapa.

Specifically, investigators noticed a mail folder containing mail belonging to Mr. Shah and addressed to Apartment 506. (CAR 499). The folder also contained mail addressed to Ms. Thapa and another woman—Icchya Thapa—with the address of Apartment 1710. Additionally, the investigators noticed several other pieces of mail addressed to Mr. Shah under the television in the apartment. (CAR 499). Investigators saw more mail addressed to Mr. Shah and Ms. Thapa in the apartment bedroom, men's and women's toiletries in the bathroom, men's and women's clothing and shoes in the bedroom closet, and several documents containing Mr. Shah and Ms. Thapa's names that appeared to have been stashed in a dirty clothes hamper. (CAR 499).

After leaving the apartment, the investigators canvassed the neighbors to see if they could confirm who lived in Apartment 1710. A nearby neighbor and his wife reviewed photos of Mr. Shah, Ms. Reitzes, and Ms. Thapa and told the investigators that Mr. Shah lived in Apartment 1710. (CAR 499). The investigators spoke to a maintenance worker who was employed by and lived in the apartment complex. The maintenance worker recognized photos of Mr. Shah and Ms. Thapa and identified them as the residents of Apartment 1710. (CAR 499). Accordingly, the BIA's determination that there was evidence that Mr. Shah was living with Ms. Thapa in Apartment 1710—not with Ms. Reitzes as he had claimed numerous times, including in February 2014—was supported by the record. (CAR 002).

Plaintiff was advised of this evidence in the 2018 NOID. In response, Plaintiff's counsel submitted a statement arguing that the USCIS could not demonstrate that there was substantial and probative evidence of marriage fraud. (CAR 126-29). In support of that statement, Plaintiff's counsel submitted the following evidence: (1) a sworn statement from Mr. Shah; (2) a notarized letter Mr. Swar; (3) a letter offering a free dental checkup to Ms. Reitzes's son as a Medicaid recipient that was addressed to Mr. Shah and Ms. Reitzes at Apartment 506; (4) additional joint

bank account records not provided to the USCIS in support of the 2012 PAR; (5) additional divorce documentation; (6) notes from USCIS investigators; (7) a notice that Mr. Shah and Ms. Thapa vacated their joint New York apartment in 2011; and (8) photos of Mr. Shah with Ms. Reitzes's son. (CAR 130-74). The BIA determined that Plaintiff did not offer "reliable evidence to rebut the evidence discovered by the USCIS" it its investigation of Mr. Shah's marriage to Ms. Reitzes. (CAR 003). This decision was reasonable because the evidence Plaintiff submitted in response to the 2019 NOID fell far short of reconciling the discrepancies discussed above.

First, the statements of Mr. Shah and Mr. Swar attempting to explain or reconcile the contradictions and inconsistencies discovered by the USCIS are insufficient to compel a determination in Mr. Shah's favor. The BIA has made clear that "[a]ttempts to explain or reconcile the conflicting accounts, absent objective evidence pointing to whether the truth lies" are insufficient to overcome significant inconsistencies. *Matter of Ho*, 19 I. & N. at 591-92. It was reasonable for the BIA to discount the accounts of Mr. Shah and Mr. Swar because the objective evidence Plaintiff provided to the USCIS was insufficient to overcome the discrepancies in the administrative record.

None of the objective, documentary evidence reconciles the inconsistent answers given by Ms. Reitzes as to when, and for how long, she lived with Mr. Shah at Apartment 506. The BIA has made clear that "contradictions in [a] petitioner's statement regarding the living arrangements of the parties [and] inconsistencies between the statements of [a] petitioner and the beneficiary . . . [regarding] their living arrangements" can be "particularly significant." *Matter of Phillis*, 15 I. & N. Dec. 385, 387 (BIA 1975). Ms. Reitzes gave investigators five different dates of her final move-out from the apartment she purportedly shared with Mr. Shah: (1) May 2013 (CAR 535); (2) sometime after the July 2013 USCIS interview (CAR 536); (3) September 2013 (CAR 534); (4)

November 2013 (CAR 533); and (5) January 2014 (CAR 534). Meanwhile, Mr. Shah represented to investigators that he and Ms. Reitzes were still living together as late as February of 2014. (CAR 499). The only objective evidence Plaintiff provided tending to show that Mr. Shah and Ms. Reitzes ever lived together is a generic, undated letter addressed the couple at Apartment 506 offering a free dental check up to Ms. Reitzes's son (CAR 139-40). It was reasonable for the BIA to find this minimal documentary evidence to be insufficient to resolve the significant inconsistencies in the record.

Moreover, the joint bank account records, given Ms. Reitzes's statements to investigators, do not establish that the couple comingled finances. In response to the 2018 NOID, Plaintiff's counsel submitted four documents related to Mr. Shah's and Ms. Reitzes's joint checking account. Ms. Reitzes submitted two of those documents—those showing account transaction history from April 11, 2012, to June 12, 2013—in support of the 2012 PAR. (CAR 360-63). Thus, the USCIS had already considered those documents in issuing the 2018 NOID and found them unconvincing. Plaintiff's submission of these documents in response to the 2018 NOID did nothing to rebut the derogatory evidence in Mr. Shah's file.

The two additional documents not submitted in support of the 2012 PAR are insufficient as well. The document containing the account activity summary for December 12, 2013, to January 13, 2014, shows no activity whatsoever. (CAR 142). The document showing the account transaction history from November 14, 2012, to February 12, 2013, reveals only four purchases over a three-month period. (CAR 141). It also shows a pattern of deposits being immediately followed by checks for nearly identical sums of money, which cuts against Plaintiff's contention that Mr. Shah and Ms. Reitzes regularly contributed income to the account. (Doc. 22-1. Pg. 25). Moreover, Ms. Reitzes herself specifically told USCIS investigators during a site visit that she

never had access to her and Mr. Shah's joint bank account and that she and Mr. Shah kept their bills separately. (CAR 490-91). Thus, it was reasonable for the BIA to be unconvinced by the minimal documentary evidence that the couple ever comingled finances.

Finally, Plaintiff provided no documentary evidence rebutting the strong evidence that Mr. Shah actively attempted to deceive investigators by concealing the fact that he was living with another woman while representing that he and Ms. Reitzes lived together has husband and wife. The BIA has stated that:

> [E]vidence that the parties knowingly and deliberately attempted to mislead or deceive immigration officials regarding their cohabitation, joint finances, or other aspects of the marriage strongly indicate fraud. Detailed reports from on-site visits and field investigations are especially important pieces of evidence that may reveal the presence of fraud. Evidence that the parties have other romantic partners . . . is also a significant consideration, especially when these facts are either not disclosed or are deliberately concealed.

*Matter of Singh*, 27 I. & N. Dec. at 609. As discussed above, the February 10, 2014, USCIS site visit revealed evidence that: (1) Mr. Shah was deliberately misleading investigators about where and with whom he lived; and (2) he was living with Ms. Thapa—an ex-girlfriend he claimed not to know. The only objective evidence Plaintiff provided responding to this contradiction was a notice from a New York law firm indicating that Mr. Shah and Ms. Thapa vacated their shared New York apartment on November 25, 2011. (CAR 171). At most, this evidence tends to show that that Mr. Shah and Ms. Thapa ceased living together *in that* New York apartment in November 2011, but it does not rebut the evidence that they were living together in Irving, Texas in February 2014. Thus, the unrebutted evidence shows that Mr. Shah actively attempted to deceive investigators about where and with whom he lived, which "strongly indicate[s] fraud." *Matter of Singh*, 27 I. & N. Dec. at 609.

---

MEMORANDUM OPINION AND ORDER

Plaintiff contends that the discrepancies identified by the USCIS investigators during their interviews with Mr. Shah and Ms. Reitzes and their various site visits are, at most, inconclusive. Plaintiff argues that, because the site visits were conducted a year to eighteen months after Mr. Shah and Ms. Reitzes married, the evidence obtained during the visits do not provide conclusive evidence about the couple's intentions at the inception of the marriage. (Doc. 22-1, pg. 22). Plaintiff also contends that the lack of direct evidence that the couple did not live together at the inception of the marriage is fatal to the Defendants' case. (Doc. 22-1, pg. 22). However, "[t]he conduct of the parties after marriage is relevant to their intent at the time of the marriage." *Matter of Laureano*, 19 I. & N. Dec. at 3. Moreover, the BIA has made clear that direct evidence of fraud is not necessary to determine that a beneficiary is prohibited from receiving a visa by 18 U.S.C. § 1154(c). *Matter of Singh*, 27 I. & N. Dec. at 608. Circumstantial evidence may suffice, and "significant inconsistencies coupled with minimal documentary evidence of a shared life" can support a conclusion that a beneficiary previously engaged in marriage fraud. *Id.* The record before the BIA contained such inconsistencies, and Plaintiff did not provide documentary evidence rebutting the derogatory evidence in the record.

In sum, the BIA based its determination that there was substantial and probative evidence of marriage fraud on the inconsistencies contained in the administrative record. Moreover, that conclusion was reasonable, especially considering the evidence that Mr. Shah actively attempted to deceive investigators as to his living situation, which "strongly indicate[s] fraud." *Id.* at 609. Thus, the Court concludes that the BIA's decision to affirm the 2019 USCIS Denial was based on the record before it and was substantially reasonable. Plaintiff has not, and cannot, meet her burden to show that the evidence before the BIA was so compelling that no reasonable fact-finder could fail to arrive at her conclusion. *Silway-Rodriguez*, 975 F.2d at 1160. Accordingly, the Court

concludes that the BIA's decision was neither arbitrary and capricious nor unsupported by substantial evidence.

### C.    The BIA Panel Was Properly Constituted.

Plaintiff argues that the 2021 BIA Decision was contrary to law because it was issued by Joan Geller, whom Plaintiff claims was an "unqualified administrative adjudicator." (Doc. 22-1, pg. 25). Specifically, Plaintiff argues that Geller was unqualified because she was a temporary appointee, and she issued the decision after her initial six-month term expired. (Doc. 22-1, pg. 25-26). However, on March 22, 2021, the Attorney General signed an order appointing Ms. Geller to a new six-month term as a temporary Appellate Immigration Judge of the BIA. (Doc. 26-1, pg. 2). Thus, Ms. Geller was three months into her six-month term and a validly-appointed member of the BIA, acting within her lawful authority, when she issued her decision in this case in June 2021.

### IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED**, Defendants' Motion for Summary Judgment is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**SO ORDERED:** March 30, 2023.

Ada Brown
UNITED STATES DISTRICT JUDGE